IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00082-WYD-MEH

SONJA J. PALMER,

    Plaintiff,

v.

DENVER HEALTH AND HOSPITAL AUTHORITY,

    Defendant.

## RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this employment discrimination case, Defendant has moved for summary judgment on all claims (Docket #81). The matter is fully briefed and has been referred to this Court for a recommendation. Based on the following analysis, the Court **recommends** that the motion be **granted in part** and **denied in part**.

Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. FED. R. CIV. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate

Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

**I.    Facts**

These are the properly supported material facts that are undisputed for purposes of the motion for summary judgment. Plaintiff, an African-American woman, was employed with Defendant from March 2002, to March 2005. Her first supervisor was Annette Callahan. From August 2004, until her termination, her supervisor was Sue Mills Parkins. Both supervisors are Caucasian. Her second-level supervisor was David Watson, an African-American male. Plaintiff was terminated on March 16, 2005.

Plaintiff's lawsuit contains the following remaining claims for relief (subsequent to several rulings by this Court):

1. Gender and race discrimination, along with retaliation for a five-day suspension;

2. Gender and race discrimination, along with retaliation for a verbal warning;

3. Gender and race discrimination, along with retaliation for her termination;

4. Gender and race discrimination, along with retaliation based on miscellaneous alleged discriminatory actions, including the three adverse employment actions mentioned above; failure to promote; denial of overtime; forced transfer to the warehouse (with accompanying loss of job responsibilities); auditing her work; being called a "vindictive bitch" by a coworker, who attributed the statement to management and, thereafter, management failed to discipline the coworker; harassment and assault by upper level supervisor David Watson, whom management failed to discipline; and harassment by Sue Mills Parkins.

       5.      Gender and race -- together with retaliatory -- harassment/hostile environment in light of all of the conduct identified above.

Addressing each of the adverse employment actions, the Court finds as follows.

<u>Five-Day Suspension</u>

In August, 2004, Plaintiff placed some tape over the lock on her office door, to facilitate easy entry and exit. She states that others in the office did this as well. Someone removed this tape from her door. Plaintiff accused her upper level supervisor, Mr. Watson, of removing the tape, an accusation that proved to be false. In an ensuing argument over this issue, Plaintiff contends that Mr. Watson physically grabbed her and mouthed the words "fuck you bitch." Plaintiff responded verbally, "fuck you back," and called Mr. Watson a "boy." She also called Mr. Watson a "boy" in a separate e-mail. As a result of this conduct, Plaintiff received a five-day suspension without pay on September 9, 2004. Defendant contends that Plaintiff's conduct was a legitimate, nondiscriminatory reason for the suspension.

<u>Verbal Warning</u>

Defendant's employment policy requires a 30-minute lunch break for employees, and employees may not modify their work schedule without a supervisor's approval. Plaintiff skipped a lunch break on November 8, 2004, in violation of the policy. Plaintiff received a verbal warning concerning this conduct. Plaintiff does not deny these facts. Defendant contends that Plaintiff's conduct was a legitimate, nondiscriminatory reason for the warning.

<u>Termination</u>

Plaintiff sent an e-mail to other employees inquiring whether they would like to purchase DVDs from a friend of hers, and offering to take any orders placed by the employees. Plaintiff in fact took orders placed by other employees, collected money, and delivered the purchased DVDs. This

e-mail violated Defendant's policy concerning distribution/solicitation while on duty. Plaintiff does not deny these facts. Her defense is that she did not know about the policy (although Defendant has submitted evidence that she was sent the policy), and that other employees sold products in the workplace. Defendant used this violation as one ground for Plaintiff's termination and now contends that Plaintiff's conduct was a legitimate, nondiscriminatory reason for the termination.

Defendant terminated Plaintiff's employment on March 16, 2005 for violating the distribution/solicitation policy; for the conduct underlying the suspension; and for the conduct underlying the verbal warning.

Harassment/Hostile Environment

The three adverse actions noted above, as well as the other actions which Defendant took against Plaintiff, are alleged by the Plaintiff to amount to a hostile work environment. Harassment based on retaliation, or race or gender for that matter, can be sufficiently severe to constitute an adverse employment action if considered in the aggregate. *E.g., Lujan v. Johanns*, 181 Fed. Appx. 735, 737, 738 (10th Cir. 2006). Defendant contends that some of these actions did not occur, and for those that did, each of the actions was supported by a legitimate, nondiscriminatory reason.

**II.    Legal Analysis**

    **A.    Legal Standard for Summary Judgment**

Defendant moves for summary judgment on all claims. A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Id.* at 323; *Maldonado v. City of Altus*, 433 F.3d 1294, 1302 (10th Cir. 2006).

If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. *Hysten v. Burlington Northern and Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.,* the evidence must be based on personal knowledge. *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1256 (10th Cir. 2005).

Because the Plaintiff is proceeding without counsel, the Court must construe her pleadings and other filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate. *Hall*, 935 F.2d at 1110.

### B.  Legal Standard for Discrimination/Retaliation/Harassment Cases

Although there are separate tests for establishing a prima facie case of discrimination, retaliation, and harassment/hostile environment, each of them requires an adverse employment action[1] and, as to each, if a defendant demonstrates a legitimate, nondiscriminatory reason for the adverse employment action, some showing must be made by plaintiff that the defendant's proffered reason is a pretext. *See generally Plotke v. White*, 405 F.3d 1092, 1098-99 (10th Cir. 2005) (citing the three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-07 (1973)). If the Defendant here has established legitimate, nondiscriminatory reasons for the alleged adverse employment actions, and Plaintiff does not submit evidence to support a material factual issue concerning pretext, summary judgment is appropriate.

### C.  Obligation of the Court to Search for Evidence of Discrimination

Defendant's motion includes an 18-paragraph statement of undisputed material facts, with pin-point citations to the record. Plaintiff *pro se* does not address these facts in her opposition. Plaintiff's opposition to the motion consists of a 16-page, unfocused recitation of the ills that Plaintiff suffered while an employee with Defendant, along with submission of hundreds of pages of documents. Plaintiff's filings leave the Court with the task of picking through these hundreds of pages to determine if there are any material factual issues. The district court "'should not be obligated to sift through hundreds of pages . . . in order to make [its] own analysis and determination of what may, or may not, be a genuine issue of material disputed fact.'" *Burke v. Gould*, 286 F.3d 513, 518 (D.C. Cir. 2002) (quoting *Twist v. Meese*, 854 F.2d 1421, 1424 (D.C. Cir. 1988)). *See Harge v. Anheuser-*

---

[1] With regard to hostile environment/harassment cases, the adverse action is a workplace in which the harassment is so severe or pervasive, that it alters a term, condition or privilege of employment and creates an abusive working environment. *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1263 (10th Cir. 2005).

*Busch*, 87 F.3d 256, 260 (8th Cir. 1996); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Caudillo ex rel. Caudillo v. Lubbock Indep. Sch. Dist.*, 411 F. Supp. 2d 550, (N.D. Tex. 2003). The district court may accept as true the movant's properly supported statement of material fact not in dispute, when the opposing party fails to submit a counterstatement. *Burke*, 286 F.3d at 518. Therefore, the Court will review Plaintiff's opposition and any references therein to the record, but will not otherwise search for evidence of disputed facts in the voluminous documents submitted by Plaintiff which, by the way, are numbered, but the exhibits are completely out of order and have no logical organization.

**III.    Discussion**

        A.    <u>Gender Discrimination/Harassment/Hostile Environment</u>

Plaintiff alleges no facts tending to establish that anything that happened at Defendant's workplace was based on gender. In her 16-page response, the Court could not even find a single argument to that effect. Plaintiff utterly fails to make an on-point argument or otherwise support her allegations of gender discrimination/harassment/hostile environment. Plaintiff must set forth facts to support her claims, and "[c]onclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment." *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003) (quotation omitted); *see, also,* FED.R.CIV.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, . . . the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."). Plaintiff has failed to meet her burden in this regard, and therefore, summary judgment is appropriate on any claim for gender bias or hostile environment/harassment.

    B.    <u>Race Discrimination/Harassment/Hostile Environment</u>

The totality of Plaintiff's arguments/evidence concerning racial basis are as follows[2]:

1. Plaintiff is African-American, p.1.

2. Defendant engages in a "process of elimination" on "African American employees," using false accusations of violations of employment policies, p. 1.

3. Plaintiff received harassment (generically alleged) from Janell (sic) Cordova in June 2004, p. 4.

4. Plaintiff's supervisor told Plaintiff that the supervisor would never pay her clerical staff $18.00 an our to work overtime, but what the supervisor "really meant was that she would not pay her Black clerical staff $18.00 an hour to work overtime." p. 9.

5. "Plaintiff's entire circumstances has (sic) changed since the unfair treatment by [Defendant], which seems to be a pattern of how they treat African American employees who complain of wrong doing." p. 15.

To be sure, Plaintiff talks at length about the adverse treatment she received, but she does not attribute any of the treatment to racial basis other than as stated above. Tenth Circuit precedent requires that in opposing summary judgment, a plaintiff "must come forward with sufficient evidence of race discrimination to create a triable issue of fact." *Duran v. Community First Bankshares, Inc.*, 92 Fed. Appx. 756, 760 (10th Cir. 2004). In the *Duran* case, the plaintiff alleged that he was treated differently because of his race, and he also established several ways he was treated differently, but he failed to offer any evidence linking the defendant's actions to race discrimination. *Id.* at 761. The Court has scoured Plaintiff's filing and has failed to find any evidence that the alleged disparate

---

[2] All page references are to Plaintiff's Notice of Opposition to Defendants (sic) Motion to (sic) Summary Judgment (<u>Docket #87</u>).

treatment was associated with race. Moreover, Plaintiff offers nothing to refute Defendant's explanation of its legitimate, nondiscriminatory reasons for its actions. The Court would be acting as Plaintiff's advocate were it to ignore the utter absence of evidence of race discrimination/harassment and deny summary judgment, an act in which this Court may not engage. *Garcia v. Furlong*, 81 F.3d 172 (Table), 1996 WL 128130 (10th Cir. Mar. 22, 1996) ("The district court has no obligation to act as an advocate for a pro se civil litigant."); *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992) ("[T]he court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations."). Plaintiff does not support her case with anything except vague and conclusory allegations. As noted previously, such allegations are insufficient to satisfy Plaintiff's burden in this regard. *See Harvey Barnett, Inc.*, 338 F.3d at 1136. Therefore, summary judgment is appropriate as to any allegation based on racial discrimination or harassment/hostile environment.

  C. Retaliation/Harassment/Hostile Environment

Plaintiff spends the vast majority of her opposition addressing the allegation that Defendant's actions constituted unlawful retaliation. The Court must address two different theories of retaliation. The first is whether Defendant engaged in direct retaliation based on Plaintiff's protected activity. *See Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (for plaintiff to obtain/prevent summary judgment in retaliation case using direct evidence, evidence must establish that plaintiff engaged in protected activity and as a result suffered the adverse employment action of which he complains); *see also Apgar v. State of Wyoming*, No. 99-8029, 2000 WL 1059444, at *10 (10th Cir. Aug. 2, 2000) (analyzing retaliation claim under *McDonnell Douglas* framework despite fact that plaintiff had "direct evidence" of a causal connection). The second is whether Defendant created a hostile work environment or harassed Plaintiff based on her protected activity. *See Lujan*

9

*v. Johanns*, 181 Fed. Appx. 735, 738 (10th Cir. 2006).

        1.        Direct Retaliation

Plaintiff has established a prima facie case of direct retaliation, if for no other reason than the temporal proximity of the alleged adverse employment actions to her various EEOC filings. In return, as noted above, Defendant submits admissible evidence that each of the adverse employment actions was done for a legitimate, nondiscriminatory reason. Even very close temporal proximity cannot operate as a proxy for the evidentiary requirement that a plaintiff demonstrate pretext. *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1172 (10th Cir. 2006). "To raise a fact issue of pretext, [plaintiff] must therefore present evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive." *Id.* (emphasis in original). Such circumstantial evidence can include, as argued in *Metzler*, a pattern of retaliatory conduct; an employer who treats the plaintiff differently before the filing of a EEO complaint versus after the filing; an employer's conduct that contradicts its own policies; an employer's preparing documents in anticipation of litigation or creating new arguments justifying its actions after a claim is filed; and proof that the employer's explanation is unworthy of credence. Of course, a plaintiff can always use disparate treatment to argue pretext. *E.g.*, *Estate of Daramola v. Coastal Mart, Inc.*, 170 Fed. Appx. 536 (10th Cir. 2006). This is not an exhaustive list, but since Plaintiff does not even argue the standards for determining whether she can establish pretext, the Court will use the list to determine whether there are any issues of fact to be tried.

The evidence submitted to the Court demonstrates that Defendant's treatment of Plaintiff did not change substantially with the filing of her first complaint. Before her first complaint, Plaintiff had already been allegedly harassed by Mr. Watson; denied training; suspended without pay; denied overtime; and denied a promotion. It appears to the Court that the downward spiral that began well

before Plaintiff engaged in protected EEO activity was fairly consistent at all times relevant to this case and did not change substantially with any EEO filing.

Plaintiff has not offered any facts or facts from which it can be inferred to establish that Defendant contracted its own policies.

There is no evidence that Defendant has offered a *post hoc* rationalization for its treatment of Plaintiff that differs from or expands upon the reasons that were given at the time the actions were taken.

Plaintiff does not offer any evidence that Defendant's explanations are unworthy of credence.

The only two areas of circumstantial evidence that are potentially present in this case are a pattern of retaliatory conduct, and disparate treatment. Plaintiff's three EEO charges were filed on September 29, 2004; December 13, 2004; and April 13, 2005. Plaintiff claims that after the September filing, her work was audited, she was removed from flex time, she received the verbal warning noted above, and supervisor Sue Mills Parkins began to harass her on a daily basis. Nothing of significance is alleged to have happened to the Plaintiff immediately after the December filing (she was terminated on March 16, 2005) or, of course, the April filing, since she was already terminated. Also, as Defendant notes, Plaintiff testified in her deposition that "everything went downhill" after she began filing her EEO complaints. Defendant does not contend that it lacked knowledge of Plaintiff's EEO filings.

As for disparate treatment, in the Final Pretrial Order Plaintiff alleged: "plaintiff was also solicited with purchasing, Avon, candy, candles, jewelry, purses etc, all being sold probably for a personal business on company time, no one was disciplined except for Plaintiff." In the present case, it appears that the solicitation charge against Plaintiff was the lynchpin upon which the termination was based.

The Court believes that the totality of Plaintiff's opposition raises enough of a question of disparate treatment and retaliatory pattern that it qualifies under the *Metzler* "temporal proximity plus" test, at least sufficiently to create a jury question. Further, the Court believes that this case may present one piece of circumstantial evidence of pretext not mentioned in *Metzler*: It could be argued that termination is a disproportionate response to the alleged misconduct (selling low-cost DVDs, skipping lunch) in which Plaintiff engaged. For this reason, the Court recommends denial of the motion for summary judgment on the issue of retaliation (which necessarily limits the potentially actionable adverse employment actions to those occurring after September 29, 2004).

    2.    <u>Harassment/Hostile Environment</u>

The Tenth Circuit recently expounded on the summary judgment standard for considering a claim of hostile environment/harassment:

> We have held that sufficiently severe or pervasive harassment of an employee can create an adverse employment action. *See Gunnell v. Utah Valley State Coll.,* 152 F.3d 1253, 1264-65 (10th Cir. 1998) (recognizing that sufficiently severe co-worker hostility or retaliatory harassment may constitute an adverse employment action for purposes of a retaliation claim if management orchestrates or knowingly acquiesces in the harassment); *see also Faragher v. City of Boca Raton,* 524 U.S. 775, 786-88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (holding that harassment which is severe and pervasive is deemed to affect a term, condition, or privilege of employment). To be actionable, the alleged retaliatory harassment must be objectively and subjectively offensive, and "must rise to some level of substantiality." *Noviello v. City of Boston,* 398 F.3d 76, 92 (1st Cir. 2005). Courts must mull the totality of circumstances and factors, including the frequency and severity of the harassment, whether it is physically threatening or humiliating, and whether it interferes with an employee's work performance. *See id.* (adapting hostile-work-environment standards set forth in *Faragher,* 524 U.S. at 787, 118 S.Ct. 2275, to retaliatory harassment claims).

*Lujan v. Johanns,*181 Fed. Appx. 735, 738 (10th Cir. 2006). Stated another way, to survive summary judgment, a claimant alleging a hostile work environment must show that a rational jury could find that the workplace is permeated with retaliatory conduct, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and that

the Plaintiff was targeted for harassment because of her protected EEO activity. *Herrera v. Lufkin Indus., Inc.*, ___ F.3d ___, 2007 WL 63663 (10th Cir. Jan. 4, 2007) (citations omitted).

Based on this standard, the Court cannot find that Plaintiff has established a claim -- for purposes of summary judgment -- of retaliatory harassment/hostile environment. Each of the alleged adverse employment actions comprising the "hostile environment" have a facially legitimate, nondiscriminatory motive assigned to them. Plaintiff fails to make a single allegation of any direct evidence of retaliation, or that anyone at the Defendant company took her EEO activity into consideration in the actions that they took. Although, as noted above, Plaintiff has come forward with sufficient evidence of pretext to require a trial on her claim of retaliation, a hostile work environment created by retaliatory motive is quite a different animal. Plaintiff has not provided sufficient evidence for a jury to find a hostile work environment. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). Therefore, the Court recommends that the motion for summary judgment be granted on this claim.

/

/

/

**IV.     Conclusion**

Based on the foregoing, and the entire record herein, it is hereby **recommended** that the Defendant's Motion for Summary Judgment [Filed October 13, 2006; Docket #81] be **granted** in part and **denied** in part. It is further **recommended** that summary judgment in favor of the Defendant be granted on all remaining claims in this action, with the exception of Plaintiff's claim of retaliation based on adverse employment actions occurring after September 29, 2004.

Dated at Denver, Colorado, this 1st day of February, 2007.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge